## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAIL NAGLE, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>LG ELECTRONICS USA, INC.,<br><br>DEFENDANT. | Case No._<br><br><br>CLASS ACTION COMPLAINT<br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Gail Nagle ("Plaintiff") hereby files this class action complaint on behalf of herself and all others similarly situated, by and through the undersigned attorneys, against Defendant LG Electronics USA, Inc. ("LG" or "Defendant") and alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigation conducted by her attorneys.

### NATURE OF THE CASE

1.      This case involves LG's design, manufacture, marketing, and sale of clothes washers ("Washing Machines") with defectively designed valves that are used to wet the clothes placed into the drum of the washer.

2.      The water hammer issues are caused by a faulty electronic valve, also known as a solenoid, in the Washing Machines that closes too fast (the "Defect"). At the start of the wash cycle, these electronically controlled valves are opened and closed several times in rapid succession, leading to the water hammer.  Upon information and belief, the washer was specifically designed to take advantage of this increased pressure by using it to create a spray of water over the dry clothes in the drum instead of using a more localized spray mechanism.

3.      The water hammer caused by the Defect not only creates annoying knocking and banging noises in the water pipes throughout a consumer's home, but also damages the pipes and other fixtures attached to the pipes, leading to water leakage, property damage and damage to other household fixtures such as water heaters, dishwashers and faucets.

4.      Water hammer is a condition caused by a sudden obstruction in the path of high pressure fluid flowing through a pipe.[1]

5.      Water hammer is usually recognized by a banging or thumping in water lines. Although it might seem to be a smooth flow, the water inside the pipe actually churns and tumbles as it moves through.[2]

6.      This can occur when a valve closes too quickly, as the fast-moving waster rushing through a pipe is brought to a quick halt, creating a sort of shock wave and a hammering noise.[3]

7.      An illustration of the water hammer problem is provided below:

[1]     http://www.lg.com/ca_en/support/product-help/CT20098067-1426622057596-others (last visited Sept. 12, 2017).

[2] http://www.plumbingmart.com/water-hammer-information.html (last visited Sept. 12, 2017).

[3] http://home.howstuffworks.com/home-improvement/plumbing/how-to-fix-pipes5.htm (last visited Sept. 12, 2017).



8.    If the root cause of the water hammer cannot be eliminated, the most effective means of controlling water hammer is a measured, compressible cushion of air that is permanently separated from the water system. Water hammer arrestors employ a pressurized cushion of various designs, which may include added pipes, pistons, and diaphragms, which permanently separates this air cushion from the water system. When the valve closes and the water flow is suddenly stopped, the pressure spike pushes the piston up into the air filed the arrestor chamber against the pressurized cushion of air. The air cushion in the arrestor reacts instantly, absorbing the pressure spike and thereby mitigating the water hammer.[4] In effect, the water hammer arrestor acts like a shock absorber for the pressure spike.

9.    Water hammer arrestors generally cost between $10 and $100 each, depending on the model, plus the cost of the extra fittings needed to install them. Consumers must also either hire a professional to install the water hammer arrestor, which could cost hundreds of dollars, or attempt to install it themselves, expending time and effort on the consumer's behalf with no promise of success.

---

[4] http://www.plumbingmart.com/water-hammer-information.html (last visited Sept. 12, 2017).

10. This problem has become so prevalent with LG's Washing Machines that numerous businesses offer water hammer arrestors that are equipped to handle the problems caused by LG's Washing Machines.[5]

11. Moreover, the Internet is replete with how-to guides for consumers to try and remedy the water hammer issue in LG's Washing Machines.[6]

12. At the time of the sale, LG failed to adequately disclose that the Washing Machines were manufactured with the Defect.

13. Plaintiff, individually and on behalf of the Class defined below, seeks to obtain relief from LG, including, inter alia, damages and declaratory relief.

14. Specifically, this class action is brought to remedy violations of law in connection with LG's fraudulent and deceptive marketing and pricing scheme relating to the Washing Machines. LG misrepresents, through advertising to potential customers, that the Washing Machines are capable of silently and efficiently washing clothes.

15. LG's marketing techniques are false and misleading in that a reasonable consumer would believe that the Washing Machines are capable of adequately washing clothes in an efficient and silent manner, when they actually cause loud banging noises, and damage to the washer, pipes and property.

---

[5] *See* https://www.amazon.com/Sioux-Chief-Mfg-660-H-4-Inch/dp/B000H5MQNM (as one customer noted, "[t]his product works great for LG front loader washing machines"); https://watersupplyparts.wordpress.com/2012/05/19/the-sioux-chief-arrester-worked-perfectly/ ("The short burst filling our LC was causing serious water hammer and the Sioux Chief 660-H did exactly what it was supposed to do") (last visited Sept. 12, 2017).

[6] *See, e.g.*, https://www.youtube.com/watch?v=d7tBP-0mI7c (last visited Sept. 12, 2017); https://www.youtube.com/watch?v=BRCU_ae_rpc (last visited Sept. 12, 2017); https://www.youtube.com/watch?v=zLLtOpSWJZM (last visited Sept. 12, 2017).

16.   LG also inflates its Washing Machine prices to reflect their claimed washing capabilities.  As a consequence of this scheme, consumers across the nation are paying more than they would otherwise pay if the true facts were disclosed by LG, and consumers are receiving a much lower quality product than is represented in LG's advertising.

17.   Accordingly, Plaintiff brings this action to redress LG's violations of California Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750 *et seq* ., New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §56:8-1 *et seq.*, and violations of the Magnuson-Moss Warranty Act, as well as fraud, negligent misrepresentation, and unjust enrichment.

## JURISDICTION AND VENUE

18.   This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the Class and the Defendant are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.   Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because LG is headquartered in this district, does business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, LG has advertised in this district and received substantial revenues and profits from their sales of Washing Machines in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred within this district. Throughout the class period, LG has directed its national false advertising campaign from the district such that LG's improper conduct emanates from this district.

20.    This Court has personal jurisdiction over LG because it is headquartered in this district, conducts substantial business in this district, and intentionally and purposefully directed Washing Machines into the stream of commerce within this district and throughout the United States from its corporate headquarters.

## PARTIES

### *Plaintiff Gail Nagle*

21.    Plaintiff Gail Nagle ("Plaintiff Nagle") is a resident of California and currently resides in San Diego. She purchased a LG washing machine for her household's personal use on April 25, 2013 for approximately $879.00.

22.    Plaintiff Nagle had the subject washing machine installed, maintained and repaired consistent with LG factory recommendations and at all times used and maintained the machine consistent with expected use for a household washer.

23.    Plaintiff Nagle experienced the loud hammering sound on every wash cycle of laundry that she did.

24.    Plaintiff Nagle reached out to LG regarding this issue and was told by LG that the issue was caused by the hoses connecting the washer to the water supply. LG sent her a second set of hoses – one for cold water and one for hot water.  The second set of hoses were in no way different and were in fact identical to the hoses that came with the washer originally.

25.    Plaintiff Nagle researched this issue online and discovered numerous online complaints about the same water hammer issue with the LG washing machine model she had purchased. Many of these complaints mentioned that some relief could be had by installing a water hammer arrestor on both the hot and cold water inlets. She tried the piston-based arrestor and it did not work. She then tried the diaphragm arrestor type, which had to be professionally installed at her own

expense, and found that this mitigated the problem. One arrestor was installed on the cold water supply and one was installed on the hot water supply.

26.    Prior to the installation of these arrestors, the Defect allowed pressure to build to 160 psi during the spike in the cold water line as measured by a water pressure gauge attached to an outside water hose bib. The normal pressure in the line when no water hammer is present is 60 psi. After installing the water hammer arrestors, the water pressure only spiked to 80 psi. Despite the Plaintiff's efforts to address this issue by lowering her household water pressure to 50 psi, structural damage still occurred in the pipes leading to the washing machine and caused a major water leak and damage to the dry wall in her ceiling.

27.    As a result of LG's conduct described herein, Plaintiff has suffered an ascertainable loss because she paid more than she otherwise would have paid for her Washing Machine (if she had chosen to purchase the Washing Machine at all), she was forced to purchase and have installed plumbing parts to attempt to rectify the hammering problem at her own expense, and she paid for repairs to leaking pipe.

## Defendant

28.    Defendant LG is a corporation duly organized under the laws of the state of Delaware with its principal place of business located at 1000 Sylvan Avenue in Englewood Cliffs, New Jersey.  LG markets, advertises and sells the subject Washing Machines throughout the United States.

## New Jersey's Substantive Law Applies to the Proposed Nationwide Class

29.    New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the National Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating

state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair. Specifically, Defendant's headquarters and principal place of business are located in New Jersey, and upon information and belief, the conduct that gave rise to Plaintiff's claims emanated from New Jersey.

## TOLLING OF STATUTES OF LIMITATIONS

30.    Any applicable statute(s) of limitations have been tolled by LG's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

31.    LG was and remains under a continuing duty to disclose to Plaintiff and the members of the Class the true character, quality and nature of the Washing Machines, that the Defect results from a poor design and/or failures in the manufacturing process, will require costly repairs, poses safety concerns for consumers' property, in addition to causing Class members to pay out of pocket costs to repair their Washing Machines.  As a result of LG's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.    The Defect**

32.    LG is a manufacturer, producer, distributor, and seller of numerous home appliances, including washing machines, throughout the United States.

33.    LG markets its products directly to consumers through its website and nationwide advertisements, and sells its products through leading retailers in the United States, such as Home Depot, Lowes, Sears, Best Buy, and JC Penney, as well as smaller, regional or local retailers.

34.    LG markets its products as state-of-the-art, first-class, and high-end, especially when compared with other machines.

35.    LG also provides consumers who purchase the Washing Machines with a one-year factory warranty for "any internal/functional Parts and Labor" from the date of the original retail purchase. Under this warranty, LG has committed to provide parts and labor to repair or replace defective parts. Moreover, LG advertises that all Washing Machines come with a 10-year warranty for the Drum Motor (Stator, Rotor, and Hall Sensor) of the Washing Machines. Furthermore, LG provides a lifetime warranty for the Stainless Steel Drum of the Washing Machines.

36.    In every sale, LG warranted that the Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects.

37.    These assertions by LG, however, were false, as every Washing Machine was manufactured with an inherent defect that created a water hammer issue for all consumers who purchased and installed a Washing Machine.

38.    Every Washing Machine was fitted with a faulty valve that closed too fast, which forced the flowing water to stop suddenly, creating a pressure spike behind the valve which acts like a tiny explosion inside the pipe. This pressure spike creates shock waves in the water that reverberate throughout the plumbing system, shaking the pipes until it is absorbed. Normally, a pocket of air will absorb such a pressure spike, but if no pocket of air is present, expensive fixtures and appliances within the plumbing system will be damaged as they are left to absorb this pressure spike.[7]  This often causes water leaks and resulting property damage.

---

[7] *See* https://www.plumbingsupply.com/waterhammerarresters.html (last visited Sept. 12, 2017).

39.    This Defect was not disclosed to consumers in any of the marketing by LG, nor was it ever disclosed to consumers when they purchased the Washing Machines.

40.    Moreover, when asked about the Defect by consumers—including Plaintiff—LG demurred and blamed other factors for the Defect and the resulting banging noises.

41.    Instead, consumers were forced to discover and discern the Defect on their own, and required to repair the Defect at their own expense.

B.    **LG's longstanding knowledge of the Defect**

42.    On September 2, 2008, LG posted an article on its website—www.lgknoweldgebase.com—which addressed the water hammer issue present in LG Washing Machines.[8] LG suggested that "[s]everal factors exacerbate water hammer and are generally traceable to inadequate system design and installation."[9] LG went on to suggest that consumers should make sure that their water pressure is below 60 PSI, in order to avoid water hammer issues in LG Washing Machines. [10] A December, 2008 posting suggested that LG originally posted its first advice to consumers about the water hammer issue in LG Washing Machines on July 3, 2008 so it has known about the defect since at least then.[11]

43.    This advice has since been removed from LG's US website.[12]

---

[8] *See* https://web.archive.org/web/20081206190901/http://lgknowledgebase.com:80/kb/index.php?View=entry&EntryID=4391 (last visited Sept. 12, 2017).

[9] *Id.*

[10] *Id.*

[11] *See* https://web.archive.org/web/20101124165950/http://lgknowledgebase.com/kb/index.php?View=comment&EntryID=4391 (last visited Sept. 12, 2017).

[12] *See* http://www.lg.com/us/support/product-search?pageCode=support-main&search=water+hammer (last visited Sept. 12, 2017).

44.    Despite removing the water hammer advice from its US website, LG continued to acknowledge that its water hammer issue persists.  LG continues to post articles in the "Support" section of their on their Canada and East Africa websites about possible "water hammering noise coming from house pipes" and continues to cast blame on outside causes rather than acknowledging the defect.[13]

45.    LG is undeniably aware of these issues, not only because it has posted articles on its own websites acknowledging them as problems persistent in their Washing Machines, but also because of countless complaints made online. These complaints, some of which are included below, evidence LG's awareness of the defect and its potential danger of consumers' property.

46.    Below is a small sampling of consumer complaints:

> **Consumer No. 1:**
> My new LG produces so much water hammer it has shaken the pipes off their brackets. Basically I have to tear down a bunch of drywall and reattach the water lines. Good luck trying to get LG or the retailer to repair your plumbing. Water hammer is a very serious problem. I also tried arresters. They didn't do anything. I have an expansion tank on my cold waterline too. The fact is the valves in the washer close to fast. That is what causes water hammer! But LG won't fix or replace. Anyone know how to file a class action lawsuit?[14]

---

[13]    *See*    http://www.lg.com/ca_en/support/product-help/CT20098067-1426622057596-others    (last    visited    Sept.    12,    2017); http://www.lg.com/eastafrica/support/product-help/CT20279036-20150159492550-others (last visited Sept. 12, 2017).

[14]    Posted  at    http://ths.gardenweb.com/discussions/2437774/lg-washer-pounding-noise by "wunder22" on April 19, 2010.

**Consumer No. 2:**

YES, LG and LG made Kenmore Elite still have the water hammer problem. We have all copper pipes, but our house is not old (for a house)...2006 Build. The water hammer was so AWFUL. The wall would literally shake and it was so violent. You could hear it 2 rooms away. We also ended up with a bust pipe, and our plumber blamed it on the Kenmore Elite washer. He knew it was LG made, as he even said DAMN LG machines....they cause a lot of water pipe problems for a lot of people. Sad, because the machine seemed well built, and the water levels were pretty decent.[15]

**Consumer No. 3:**

LG machines as a whole have this design problem. Beyond adding water hammer arresters and crossing your fingers that your homes pipes aren't ruined... There's not much you can do from what I've read.[16]

**Consumer No. 4:**

I am disappointed, no - disgusted with LG. With their products and with their customer service (or the lack thereof.) My WM2016 front-load washing machine has exhibited significant water hammer ever since I purchased it. I have tried everything LG recommended, everything my plumber recommended, everything the local water department recommended and everything recommended in all of the websites I have visited to fix it and NOTHING has worked […].[17]

**Consumer No. 5:**

Front load washer makes loud tapping noise during spin cycle. The noise is so loud you can't talk on phone, watch TV or have a conversation while the

---

[15] Posted at id. by "larsi_gw" on November 2, 2015.

[16] Posted at *id*. by "L M" on November 22, 2015.

[17] Posted at *id*. by "barrie_hunter" on July 28, 2016.

> washer is on. I leave the house whenever I wash. LG
> techs tell me that's normal for a front loader. I cannot
> believe a company would make something so loud.[18]

47.    LG also has a wealth of experience designing and manufacturing washing machines, and likely conducts pre- and post-release testing on incoming batches of components, including water valves for Washing Machines. These tests are designed to verify that the parts are free from defects and comply with LG's specifications.  As a result, LG knew or should have known that water valves used in Washing Machines were defective and likely to cause water hammer issues, costing Plaintiff and Class members hundreds or thousands of dollars in repairs.

48.    Each of LG's Washing Machines are defectively designed and manufactured with a washer valve that closes too fast, causing knocking and/or banging noises.

49.    Plaintiff and Class members have suffered damages as a result of Defendant's deceptive practices, including but not limited to the fact that its Washing Machines create such a loud and damaging banging in the water pipes that consumers must pay hundreds or thousands of dollars to fix the problem, or risk water leakage and resulting property damage. Thus, Plaintiff and Class members were saddled with a substandard device that fails to perform the basic functions of a washing machine.

50.    The experiences and complaints of Plaintiff, along with LG's own website addressing these complaints with an article entitled, "Water Hammering Noise" show that LG was well aware of customer complaints and experiences concerning the defects in the LG Washing Machines. But despite this knowledge, LG failed to implement any changes to cure the defects associated with LG

---

[18] Posted at
https://www.consumeraffairs.com/homeowners/lg_washing_machine.html?page=18 by "Susan of Port Rickey, FL" on July 24, 2015.

Washing Machines or the way LG markets and sells Washing Machines to consumers.

## CLASS ACTION ALLEGATIONS

51.    Plaintiff brings this action on her own behalf, and on behalf of the following Classes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Classes consist of each of the following:

**National Class:**
All persons or entities in the United States who purchased one or more Washing Machines.

Or, in the alternative,

**California Class:**
All persons or entities in California who purchased one or more Washing Machines for primarily personal, family, or household purposes, as defined by Cal. Civ. Code § 1791(a).

52.    Together, the National and California Class shall be collectively referred to herein as the "Class." Excluded from the Class are LG, its affiliates, employees, officers and directors, persons or entities that purchased the Class Washing Machines for purposes of resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

53.    Numerosity: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the possession of LG and obtainable by Plaintiff only through the discovery process, and Plaintiff believes that the Class consists of hundreds of thousands, if not millions, of persons and entities that were deceived by LG's conduct.

54.    Existence and Predominance of Common Questions of Fact and Law:

Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

      a.  whether LG misrepresented the quality of the Washing Machines;

      b.  whether LG omitted the Defect from its disclosure of the properties of the Washing Machines to consumers;

      c.  whether LG's conduct violated the California Unfair Competition Law;

      d.  whether LG's conduct violated the California False Advertising Law;

      e.  whether LG's conduct violated the California Consumers Legal Remedies Act; and

      f.  whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief;

55. <u>Typicality</u>: All of Plaintiff's claims are typical of the claims of the Class since each Washing Machine was advertised with the same type of false and/or misleading statements, regardless of model or production year. Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of LG's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

56. <u>Adequacy</u>: Plaintiff is an adequate representative because her interests do not materially or irreconcilably conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex, consumer class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and

adequately protected by Plaintiff and her counsel.

57.    <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injuries suffered by each individual Class member are relatively small compared to the burden and expense of individually prosecuting complex and extensive litigation. It would be virtually impossible for members of the Class individually to effectively redress the LG's wrongs. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, LG's records and databases.

58.    LG has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

**<u>VIOLATIONS ALLEGED</u>**

**<u>COUNT I</u>**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,
BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*
(On Behalf of the California Class)**

59.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

60.    California Business & Professions Code § 17200, *et seq*. prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200

16

as including any "any unlawful, unfair or fraudulent business act or practice . . . ."

61.    LG has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by concealing and misleading Plaintiff and Class members concerning the valve defect of the Washing Machines.

62.    These acts and practices have also deceived Plaintiff and are likely to deceive persons targeted by such statements and omissions. In failing to disclose material facts concerning the valve defect of the Washing Machines, LG breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and Class members.  The omissions and acts of concealment by LG pertained to information material to Plaintiff and Class members in that statements concerning the valve defect would have been likely to deceive them based on a reasonable consumers' expectations and assumptions.

63.    The injuries suffered by Plaintiff and Class members are not outweighed by any potential countervailing benefit to consumers or to competition. Nor are they injuries that Plaintiff and Class members should or could have reasonably avoided.

64.    Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by LG, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

## COUNT II
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*
### (On Behalf of the California Class)

65.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

66.    In violation of California Business & Professions Code § 17500, *et seq.*, LG has disseminated or caused to be disseminated deceptive advertising misrepresentations, omissions and practices as described herein. These statements are actionable violations of § 17500 in that LG expressly states that the Washing Machines have attributes that they do not possess.

67.    LG's advertising misrepresentations, omissions, and practices made in connection with the sale of the Washing Machines are unfair, deceptive and/or misleading within the meaning of California Business & Professions Code § 17500, *et seq.*  These representations are likely to, and did, deceive reasonable consumers such as Plaintiff.

68.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were and are misleading or likely to mislead for the reasons set forth above.

69.    As detailed above, Plaintiff suffered injury in fact and a loss of money or property as a result of LG's acts and practices, which violate § 17500, *et seq.*

70.    Pursuant to California Business & Professions Code § 17535, Plaintiff and members of the Class seek, and are entitled to:

        a.    an order enjoining LG from continuing to make false and misleading statements concerning the Washing Machines;

        b.    restitution and disgorgement of any and all excessive amounts paid to LG or its agents;

        c.    equitable relief pursuant to CAL. CIV. PROC. CODE § 384;

        d.    pre- and post-judgment interest at the highest rate allowable by law; and

        e.    payment of attorney's fees and costs pursuant to, *inter alia*, CAL. CIV. PROC. CODE § 1021.5, the common fund and private attorney general doctrines.

71.     As a result of LG's violations of the false advertising statute, Plaintiff and Class members are entitled to equitable relief as the Court deems appropriate.

**COUNT III**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**
**CALIFORNIA CIVIL CODE § 1750 *et seq*.**
**(On Behalf of the California Class)**

72.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

73.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750 *et seq*.  Plaintiff brings this action on her own behalf and on behalf of the Class members, all of whom are similarly situated consumers within the meaning of CAL. CIV. CODE. § 1781.

74.     The acts and practices described in this Complaint were intended to result in the sale of goods, specifically televisions, in consumer transactions.  LG has violated, and continues to violate, the CLRA, CAL. CIV. CODE § 1770, including but not limited to subdivisions (a)(5), (a)(7), and (a)(16) by:

    a.     Representing that the Washing Machines have characteristics, as described herein, which they do not have.

    b.     Representing that the Washing Machines are of a particular standard or quality, when they are of another.

    c.     Representing that the Washing Machines were supplied in accordance with previous representations, when they were not.

75.     Plaintiff and the Class members have suffered damage as a result of these violations.

76.     LG misled consumers and concealed material facts concerning the Washing Machines even though LG was well aware of the true facts when Plaintiff and the Class purchased their Washing Machines.

19

77.    LG's misrepresentations and omissions described in the preceding paragraphs were at a minimum made without the use of reasonable procedures adopted to avoid such errors.

78.    LG, directly or indirectly, has engaged in substantially similar conduct with respect to Plaintiff and each member of the Class.

79.    Unless LG is enjoined from engaging in such wrongful actions and conduct in the future, members of the consuming public will be further damaged by LG's conduct.

80.    At this time, Plaintiff only seek injunctive relief.  Contemporaneous with the filing of this Class Action Complaint, Plaintiff has served a demand letter upon LG pursuant to CAL. CIV. CODE § 1782.  If LG refuses to provide the relief demanded by Plaintiff on behalf of herself and the Class, Plaintiff will amend her complaint to seek all available relief under the CLRA.

<u>**COUNT IV**</u>
**BREACH OF WRITTEN WARRANTY**
**UNDER THE MAGNUSON-MOSS WARRANTY ACT**
**(On Behalf of the Nationwide Class, or Alternatively, the California Class)**

81.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

82.    Plaintiff and the Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

83.    Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

84.    The Washing Machines are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

85.    Defendant's warranties are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

86.    Defendant breached the express warranties by refusing and/or failing to honor the express warranties by repairing, free of charge, the valve defect.

87.    Plaintiff and the other Class members relied on the existence and length of the express warranties in deciding whether to purchase the Washing Machines.

88.    Defendant's breach of the express warranties has deprived Plaintiff and the other Class members of the benefit of their bargain.

89.    The amount in controversy of Plaintiff's individual claim meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

90.    Defendant has been afforded a reasonable opportunity to cure its breach of the written warranties and/or Plaintiff and the other Class members were not required to do so because providing Defendant a reasonable opportunity to cure its breach of written warranties would have been futile. Defendant was also on notice of the Defect from the complaints and service requests it received from Class members, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

91.    As a direct and proximate result of Defendant's breach of the written warranties, Plaintiff and the other Class members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees, and/or other relief as deemed appropriate..

## COUNT V
## COMMON LAW FRAUD
### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

92.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93.    LG made material misstatements of fact to Plaintiff and Class members regarding the non-defective nature of the valves in the Washing Machines.  As a result, Plaintiff and the Class were fraudulently induced to purchase the Washing Machines.

94.    These misstatements made by LG were made with knowledge of their falsity, and with the intent that Plaintiff and members of the Class would rely upon them.

95.    As described herein, LG fraudulently sold Washing Machines with defective valves that effectively prevented purchasers from purchasing Washing Machines without defective valves.

96.    At the time LG made these misrepresentations and concealments, and at the time Plaintiff and Class members purchased the Washing Machines, Plaintiff and the Class were unaware of the falsity of these misrepresentations, and reasonably believed them to be true.

97.    In making these misrepresentations and omissions, LG knew they were false and intended that the Plaintiff and Class members would rely upon such misrepresentations.

98.    Plaintiff and Class members did in fact rely upon LG's misrepresentations and omissions concerning the non-defective nature of the valves in the Washing Machines.

99.    As a direct and proximate result of LG's deceptive, fraudulent, and unfair practices, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

100.    Plaintiff, on behalf of themselves and all others similarly situated, demands judgment against LG for damages and declaratory relief.

<u>**COUNT VI**</u>
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

101.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

102.    Under the circumstances alleged, LG owed a duty to Plaintiff and Class to provide them with non-defective valves in their Washing Machines.

103.    LG misrepresented to Plaintiff and Class members that by purchasing the Washing Machines, they would be enjoying non-defective Washing Machines, which is not what they actually received.  LG failed to inform consumers of the valve defect.

104.    LG's misrepresentations and omissions, as described herein, were false, negligent and material.

105.    LG negligently made these misrepresentations and omissions with the understanding that Plaintiff and Class members would rely upon them.

106.    Plaintiff and Class members did in fact reasonably rely upon these misrepresentations and omissions made by LG.

107.    As a direct and proximate result of LG negligent actions, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

108.    Plaintiff, on behalf of herself and all others similarly situated, demands judgment against LG for damages and declaratory relief.

## COUNT VII
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

109.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein .

110.    Plaintiff brings this cause of action on behalf of herself and on behalf of the members of the Class against Defendant.

111.    Plaintiff and members of the Class conferred a benefit on Defendant by purchasing the Washing Machines.

112.    Defendant had knowledge that this benefit was conferred upon it.

113.    Defendant has been unjustly enriched at the expense of Plaintiff, and its retention of this benefit under the circumstances would be inequitable.

## COUNT VIII
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (On Behalf of the National Class)

114.    Plaintiff realleges and incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

115.    The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…." N.J. STAT. ANN. § 56:8-2.

116.    Plaintiff and members of the Class are consumers who purchased Washing Machines for personal, family, or household use.

117.    Defendant engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions by knowingly failing to disclose the valve defect in the tubing for its Washing Machines.

118.   Defendant did not fully and truthfully disclose to its customers the true nature of the valve defect for the Washing Machines. As a result, Plaintiff and the Class were fraudulently induced to purchase the Washing Machines.

119.   Defendant intended that Plaintiff and the Class rely on the acts of concealment and omissions, so that they would purchase the Washing Machines.

120.   Defendant's conduct caused Plaintiff to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiff has suffered an ascertainable loss by receiving less than what was promised.

121.   A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff. Had the true information concerning the valve defect of the Washing Machines been disclosed, consumers would not have purchased them or would have paid less for the Washing Machines had they decided to purchase them.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

A.   Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.   Appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.   Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D.   Award pre-judgment and post-judgment interest on such monetary relief;

E.   Grant appropriate injunctive and/or declaratory relief;

F.    Award reasonable attorneys' fees and costs; and

**G.**    Grant such further relief that this Court deems appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated:  September 15, 2017                CAFFERTY CLOBES MERIWETHER
                                          & SPRENGEL LLP


                          BY:    */s/ Bryan Clobes* _____
                                 Bryan Clobes
                                 1101 Market St., Suite 2650
                                 Philadelphia, Pennsylvania 19107
                                 Telephone:  (215) 864-2800
                                 Facsimile:  (215) 864-2810
                                 E-Mail:  bclobes@caffertyclobes.com

                                 Joseph G. Sauder
                                 Matthew D. Schelkopf
                                 Joseph B. Kenney
                                 **MCCUNE WRIGHT AREVALO LLP**
                                 555 Lancaster Avenue
                                 Berwyn, Pennsylvania 19312
                                 Telephone: (610) 200-0580
                                 Facsimile:  (610)727-4360
                                 E-Mail:      jgs@mccumewright.com
                                              mds@mccunewright.com
                                              jbk@mccunewright.com

                                 Daniel O. Herrera
                                 Christopher P.T. Tourek
                                 CAFFERTY CLOBES MERIWETHER
                                 & SPRENGEL LLP
                                 150 S. Wacker Dr., Suite 3000
                                 Chicago, Illinois 60606
                                 Phone: (312) 782-4880

26

Facsimile: (312) 782-4485
E-Mail: dherrera@caffertyclobes.com
ctourek@caffertyclobes.com

Thomas B. Malone
**The Malone Firm, LLC**
1650 Arch Street
Suite 2501
Philadelphia, PA, 19103
Phone: (215) 987-5200
Email:        tmalone@themalonefirm.com

*Counsel for Plaintiff and the Putative
Class*